UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CALVIN MILLER, a.k.a. JOHN MILLER

                Petitioner,

  -against-

CALVIN RABSATT,

                Respondent.
------------------------------------x

*1/8/14*

REPORT AND RECOMMENDATION

10 Civ. 3687 (LAP)(MHD)

TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:


    <u>Pro</u> <u>se</u> petitioner Calvin Miller seeks a writ of habeas corpus to challenge his 2002 conviction in New York State Supreme Court, Bronx County, for single counts of attempted assault in the first degree and criminal possession of a weapon in the first degree, two counts of reckless endangerment in the first degree, and one count of criminal possession of stolen property in the fifth degree. The court sentenced Miller to concurrent determinate prison terms of twelve years each for attempted assault and weapon possession, seven years for reckless endangerment, and one year for possession of stolen property.


    For the reasons that follow, we recommend that the petition be dismissed.

1

FACTUAL BACKGROUND

On the evening of March 25, 1999, Roy White was returning to his car after withdrawing cash from an ATM when he was approached by a man with a gun, who climbed into his car and demanded money. (Trial Tr. ("Tr.") 79-80). Moments later a second man entered the car and the first man ordered Mr. White to drive. (Tr. 80). Soon thereafter, Mr. White crashed his car into an oncoming vehicle, crawled out of his car, and lay on the ground, while the two car-jackers began running down the street. (Tr. 80-81, 146). The driver of the second car involved in the accident, Mr. Shawn McCalla, began to chase after the car-jackers, but aborted his chase when the man with the gun turned and shot at him twice. (Tr. 149-151). Mr. McCalla returned to his car at the scene of the accident and called the police. (Id.).

When the police arrived, Mr. McCalla described the shooter as a black male with braids, dark skin, approximately fifteen years old, 5'9", weighing approximately 145 to 160 pounds. (Tr. 42-44). Mr. White similarly described the man with the gun as a black male with "dreads," approximately 18 to 20 years old. (Tr. 62).

2

At the 47th precinct, Mr. McCalla was shown an array of photographs of individuals fitting the physical description he had provided of the shooter. (Hearing Tr. Nov. 7, 2001 ("Hearing Tr.") 11-14). Of those photographs, Mr. McCalla identified petitioner's as that of the gunman. (Id. at 11-14, 19-21).

On April 5, 1999, Mr. McCalla was summoned to the 48th precinct to view a line-up. (Tr. 156). He identified petitioner as the gunman. (Id. at 158-159).

## PRIOR PROCEEDINGS

### A. Trial Court Proceedings

Petitioner was indicted by a grand jury on May 3, 1999. (Opp'n Mem. at Ex. 1 p. 3). In a pre-trial motion to suppress, the defense argued that the lineup had been suggestive, that Mr. McCalla's initial description of the suspect's approximate height and weight had not corresponded to petitioner's height and weight, and that Mr. McCalla, after viewing a photo array including petitioner, had been predisposed to choose the person in the line-up who matched the person in the photo array.

(Hearing Tr. 92-96). The court denied petitioner's motion. (Id. at 121).

Miller went to trial on November 13, 2001 before a jury and the Honorable Caesar Cirigliano, S.C.J. Following the presentation of evidence, the court submitted ten counts to the jury: two counts of robbery, two counts of attempted robbery, one count of possession of stolen property, one count of reckless endangerment, one count of attempted murder, one count of attempted assault, one count of possession of a weapon with intent to use it, and one count of simple possession of a loaded weapon. (Tr. 319-37). The judge instructed the jurors not to consider attempted assault if it found petitioner guilty of attempted murder, and similarly not to consider the simple-weapon charge if they found him guilty of the more serious weapon charge. (Id. at 340).

In its first verdict, the jury acquitted petitioner of all four robbery counts, possession of a weapon with intent to use it, and attempted assault (id. at 380-83), and found him guilty of reckless endangerment, possession of stolen property, simple possession of a weapon, and attempted murder. (Id.). The court concluded that this verdict was inconsistent and "not in

4

accordance with [its] instructions." (Id. at 413). The court accepted the jury's acquittals on the four robbery counts, as well as the conviction on the stolen-property count, but resubmitted the counts of reckless endangerment, attempted murder, attempted assault, possession of a weapon with intent to use it, and simple possession. (Id. at 419-20). As requested by the defense, the court reminded the jury that identification was a preliminary question that must be answered before considering each charge. (Id. at 444). On November 21, 2001, the jury returned its second verdict, finding petitioner guilty of attempted assault in the first degree, criminal possession of a weapon in the first degree, two counts of reckless endangerment in the first degree, and criminal possession of stolen property in the fifth degree. (Id. at 448-60).

On June 4, 2002, the court sentenced petitioner to concurrent determinate prison terms of twelve years each for attempted assault and weapons possession, seven years for reckless endangerment, and one year for possession of stolen property. (Killian Decl. dated Mar. 29, 2013 at 2).

On or about March 11, 2002, petitioner moved the trial court to set aside its verdict pursuant to C.P.L. § 330.30,

5

arguing that the court had improperly failed to make further inquiry of one juror who allegedly did not respond when polled. (See Opp'n Mem. at Ex. 7 p. 2). In an order dated June 3, 2002, the court denied petitioner's motion, holding that under C.P.L. § 310.80, the court is only required to make further inquiry of a polled juror when that juror answers in the negative. (See id. at p. 3).

### B. Miller's Appellate Efforts

Petitioner appealed to the First Department, asserting two claims. First, petitioner argued that the line-up procedures and photo arrays had been unduly suggestive. (Opp'n Mem. at Ex. 2 p. 13). Second, petitioner asserted that the trial court committed reversible error when it denied defense counsel's request to recharge identification to the jury. (Id. at p. 26). On April 25, 2006, the Appellate Division unanimously affirmed petitioner's conviction. People v. Miller, 28 A.D.3d 374, 812 N.Y.S.2d 533 (1st Dept. 2006). The court found that the participants in the lineup were "sufficiently similar to defendant in appearance that there was no danger that he would be singled out for identification" and that petitioner's arguments concerning the photographic identification procedures

6

that occurred prior to the lineup were not preserved in accordance with New York contemporaneous objection rules. Id. at 374-75, 812 N.Y.S.2d at 534. The Court of Appeals summarily denied petitioner's appeal on July 14, 2006. People v. Miller, 7 N.Y.3d 792, 821 N.Y.S.2d 822 (2006).

On April 17, 2007, petitioner moved the Appellate Division for a writ of error coram nobis, claiming that appellate counsel had been ineffective for failing to pursue a claim regarding improper polling of the jury. (See Opp'n Mem. at Ex. 7 p. 4). On June 5, 2007, the Appellate Division denied petitioner's application. (Id.). On September 24, 2007, the Honorable Carmen Beauchamp Ciparick denied petitioner's motion for leave to appeal to the Court of Appeals. People v. Miller, 9 N.Y.3d 924, 844 N.Y.S.2d 179 (2007).

### C. Petitioner's State-Court Collateral Challenges

On June 5, 2007, petitioner sought vacatur of his conviction pursuant to C.P.L. § 440.10, alleging that (1) his appellate counsel had been ineffective, (2) a mistrial had been warranted because the witness Mr. McCalla had observed petitioner walk into the lineup procedure and petitioner had

7

been the only participant with long hair, (3) the judge had not given proper jury instructions, (4) the court had failed to conduct further inquiry of a juror concerning the voluntariness of her verdict, (5) petitioner's sentence was excessive, (6) he had been denied the opportunity to have counsel at the lineup, (7) the verdict had been problematic in that it had found him guilty of some counts while finding him not guilty of others, (8) he had not been permitted to take a lie detector test, (9) alternate juror number two knew his aunt, creating a conflict of interest, and (10) he had been subjected to double jeopardy, presumably when the court directed the jury to reconsider its initial verdict as to several counts. (See Opp'n Mem. Ex. 9). In a decision dated May 5, 2008, Justice Cirigliano summarily denied petitioner's § 440.10 motion on the ground that his claims were record-based and had not been raised on direct appeal and, thus, were procedurally barred pursuant to C.P.L. § 440.10(2)(c). (Id. at Ex. 11).

On August 27, 2008, petitioner again sought vacatur of the judgment under C.P.L. § 440.10. (Id. at Ex. 12). In his second motion, he added several new claims, including an assertion that he had not been read his Miranda rights during his arrest and that trial counsel has been ineffective. (Id.). Before the trial

8

court issued its opinion denying petitioner's second 440.10 motion, he filed yet another motion on January 5, 2009, seeking leave to reargue the August 27th motion. (Id. at Ex. 14). On February 4, 2009, the trial court denied the second 440.10 motion, finding that it was procedurally barred because petitioner had failed to raise his record-based claims on direct appeal and did not provide a justifiable reason for this failure. (Id.). It subsequently denied his January 5, 2009 motion in an opinion dated April 15, 2009, holding that petitioner's motion failed "to allege that this court overlooked or misapprehended any matters of fact or law," as required by C.P.L. § 2221(d)(2). (Id. at Ex. 18 p. 4).

### D. Proceedings in this Court

Petitioner filed his habeas petition in this court on January 29, 2010. (Pet.). He presses no less than nine grounds for relief. (Pet. § 13). First, he argues that he was denied his constitutional right to counsel at the lineup. Second, he asserts that the police "created a conspicuous danger of misidentification" by using a suggestive lineup and suggestive photo arrays. Third, he contends that the trial court committed reversible error when it denied the defense request to re-charge

9

the jury on identification. Fourth, he insists that his trial counsel was ineffective, purportedly in violation of his Fifth, Sixth, and Fourteenth Amendment rights. Fifth, he argues that one of the jurors should not have been sworn in because she had served on two previous juries. Sixth, he contends that the jury foreperson should not have been sworn in because she lived close to the crime scene and had been interviewed by detectives investigating the crime. Seventh, he asserts that he was never read his Miranda rights at the time of his arrest. Eighth, he alleges rather vaguely that the prosecutor "overstepped his boundaries" -- an assertion that we infer aims to reiterate the claims articulated in his second 440.10 motion that the prosecutor had failed to turn over exculpatory evidence and had visited petitioner outside the presence of counsel, despite knowing that he was represented. (See id. at § 12(b)(4); see also Opp'n Mem. at Ex. 12 p. 4). Ninth, petitioner complains that his appellate counsel was ineffective in failing to argue that trial counsel had been inadequate. (Pet. § 13).

By order dated May 5, 2010, the District Court directed Miller to submit an affirmation addressing the question of whether the petition was timely under 28 U.S.C. § 2244(d). (Order, dated May 5, 2010 [docket no. 3]). Miller complied with

that direction in an affirmation filed July 2, 2010. (Pet.'s Aff. dated June 28, 2010 [docket no. 4]). The case was then assigned to the Honorable Richard Owen. He subsequently referred the case to me for a report and recommendation. (Order of Reference dated Dec. 19, 2012 [docket no. 10]). Defendant filed opposition papers in April 2013, arguing that Miller's many claims were all meritless and that some were unexhausted or procedurally barred. (See generally Opp'n Mem.).

Following full briefing, mail that we had sent to petitioner at his last known address, at the federal Batavia Detention Facility, was returned as undeliverable. Accordingly, we asked both the New York State and the federal facilities where Miller had previously resided for his last known address. Based on those inquiries, the court learned that on September 26, 2013 petitioner had been removed from the United States to his native Jamaica. (See Email to Ct. from Immigration Enforcement Agent Andrew D. Beck, Nov. 13, 2013). Moreover, in reviewing a decision in another habeas case filed by petitioner in the Western District of New York, Miller v. Tyron, 2013 WL 5592484, (W.D.N.Y. Oct. 10, 2013), it came to our attention that Miller may have been removable under the Immigration and Nationality Act prior to the June 4, 2002 conviction on which he

premises his current habeas petition. Accordingly, on November 13, 2013, we ordered respondent to advise the court whether petitioner had indeed been removed from the United States and, if so, whether his petition should be deemed moot due to a lack of collateral consequences flowing from his challenged state conviction. (Order, dated Nov. 13, 2013 [docket no. 21]). In response to our order, respondent's counsel filed a supplemental opposition to the petition, in which she reported that subsequent to the 2002 conviction that Miller challenges in the instant petition, he was ordered deported to his native Jamaica, predicated on a prior conviction, on November 27, 2000, for the sale of crack-cocaine in or near a school ground. (Killian Suppl. Decl. dated Nov. 15, 2013, p. 3 & Ex. 1). Respondent's counsel confirmed that Miller had in fact been deported on September 26, 2013. (Id. at p. 3).

I.   Analysis

A. Mootness

Article III of the Constitution requires that at the time that a federal court decides a case there must be a live case or controversy. Burke v. Barnes, 479 U.S. 361, 363 (1987). In other

words, federal courts are jurisdictionally restricted to the "limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528 (2013).

"For the case-or-controversy requirement to be met when a habeas petitioner is not longer in custody [following deportation] the petitioner must be suffering a 'concrete and continuing injury' constituting a 'collateral consequence' of the petitioner's detention that can be rectified if he prevails in his quest for the writ." Gonzalez v. I.N.S., 2002 WL 31444952, *3 (S.D.N.Y. Oct. 31, 2002) (quoting Spencer v. Kemna, 523 U.S. 1, 7 (1998)); see Perez v. Greiner, 296 F.3d 123, 125 (2002). There is a general "presumption that collateral consequences attach to criminal convictions post-release." Perez, 296 F.3d at 125 (original emphasis omitted). Thus, a habeas challenge to a petitioner's conviction will be mooted by deportation or release from custody "'only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" Perez, 296 F.3d at 125 (quoting Sibron v. New York, 392 U.S. 40, 57 (1968)). Indeed, as several courts have acknowledged in this

13

context, the impact of deportation and the restriction on readmission to the United States that may arise from a criminal conviction can be significant. See, e.g., Perez, 296 F.3d at 126; So v. Reno, 251 F. Supp. 2d 1112, 1121 (E.D.N.Y. 2003) ("Deportation, like a criminal conviction, almost always entails adverse collateral legal consequences. While technically a civil proceeding and non-punitive, deportation is a harsh sanction that has long been recognized as more severe than many criminal penalties."); Gonzalez, 2002 WL 31444952 at *4 (citing cases).

Nonetheless, if habeas relief from a challenged conviction would have "no meaningful effect" on the deported alien-petitioner's circumstances due to comparable penalties arising from another conviction, the petition before the court will be deemed moot. See Perez, 296 F.3d at 126. For that reason, in Perez the Second Circuit held that, following the petitioner's deportation, his challenge to a second-degree-robbery conviction was rendered moot, since his conviction on "a wholly separate ground" of attempted criminal sale of a controlled substance in the third degree had rendered him subject to the same penalty as that arising from the challenged robbery conviction -- that is, permanent inadmissibility to the United States. Id. at 125-26.

14

Here, petitioner was not deported because of his challenged 2002 robbery conviction, but rather because of a 2000 conviction for the sale of crack-cocaine in or near school grounds. (Killian Supplemental Decl. dated Nov. 15, 2013 at ¶ 3 & Ex. 1). According to the Immigration and Naturalization Service's June 13, 2001 Notice to Appear for removal proceedings, the conviction in 2000 rendered petitioner subject to deportation under sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1227(a)(2)(B)(i), in that petitioner had been convicted of an aggravated felony[1] and had violated a "law or regulation of a State, the United States, or a foreign country relating to a controlled substance… other than a single offense involving possession for one's own use of 30 grams or less of marijuana." (Killian Supplemental Decl. dated Nov. 15, 2013 at Ex. 1). We note that an alien who has been convicted of an aggravated felony is permanently inadmissible into the United States following removal. 8 U.S.C. § 1182(a)(9)(A)(ii). For that reason, irrespective of Miller's challenged 2002 conviction, his 2000 conviction subjected him to removal and a permanent bar to

---

[1] The Immigration and Nationality Act defines aggravated felonies to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101.

15

re-entry. Thus, even if Miller were to prevail on the current petition, the relief granted would have no meaningful effect on his circumstances. Here, as in Perez, "because [petitioner] is permanently inadmissible to this country due to his prior drug conviction, collateral consequences cannot arise from the challenged robbery conviction, and the petition is moot." Perez, 296 F.3d at 126.

Although it is true that a moot case may still be justiciable in "'exceptional situations'" if "the underlying dispute is 'capable of repetition, yet evading review,'" Van Wie v. Pataki, 267 F.3d 109, 113 (2d Cir. 2001) (quoting Knaust, 157 F.3d at 88 and Dennin v. Conn. Interscholastic Athletic Conference, Inc., 94 F.3d 96, 101 (2d Cir. 1996)), the instant petition, comprising commonly-encountered arguments for habeas relief, does not qualify as such a case. In short, the petition should be dismissed as moot.

B. Untimeliness

Even if the court disagrees with our jurisdictional assessment of mootness, we recommend sua sponte that the petition be dismissed as untimely.

16

Pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the statute of limitations for filing a habeas petition is one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The statute of limitations is tolled while "a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," 28 U.S.C. § 2244(d)(2), but such filings do "not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). Additionally, a court may, in its discretion, invoke equitable tolling, but only in "rare and exceptional circumstance[s]." Id. (citing Turner v. Johnson, 177 F.3d 390,

391-392 (5th Cir.1999)). "Equitable tolling is only appropriate where a party is 'prevented in some extraordinary way from exercising his rights.'" Pettiford v. Graham, 2009 WL 920342, *2 (S.D.N.Y. Apr. 3, 2009) (quoting Smith, 208 F.3d at 17).

In this case, the statute of limitations began to run ninety days after the Court of Appeals' July 14, 2006 denial of leave to file a direct appeal -- that is, October 12, 2006. See Dillon v. Conway, 642 F.3d 358, 360 n.3 (2d Cir. 2011). Between that date and the petitioner's first collateral-review filing on April 17, 2007, 187 days elapsed. The limitations period was tolled from April 17, 2007 until May 16, 2008, while the state courts considered his coram nobis petition and his first § 440.10 challenge. The limitations period began to run again May 17, 2008 and ran for 102 days, until August 27, 2008, when it was tolled upon the filing of Miller's second § 440.10 challenge. The limitations period remained tolled until April 17, 2009, when the trial court denied Miller's January 5, 2009 supplement to his second § 440.10 challenge. The limitations period then ran for 287 more days, from April 18, 2009 until the filing of Miller's habeas petition on January 29, 2010. In total, 576 days elapsed between the date that Miller's

18

conviction became final and the date that he filed his petition in this court. The petition, in other words, is untimely.

We note that respondent did not assert an untimeliness defense in opposition to the petition, although the District Court had initially raised the limitations issue. The statute of limitations set forth in AEDPA is an affirmative defense, not a jurisdictional issue. Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000). Nevertheless, even where, as here, neither party has addressed the issue of timeliness, district courts "are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition." Day v. McDonough, 547 U.S. 198, 209 (2006). If the court intends to rely on the petitioner's procedural default for lack of timeliness, rather than on the merits, it must first "accord the parties fair notice and an opportunity to present their positions." Id. at 2010. In addition, the court "must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." Id. at 210 (quoting Granberry v. Greer, 481 U.S. 129, 136 (1987)).

19

In light of the fact that the parties will be afforded the opportunity to respond to this Report and Recommendation before a court order is issued, we believe that the requirement that they be given notice and the opportunity to present their positions on the question of timeliness will be adequately satisfied. Moreover, since petitioner is no longer in custody, he is unlikely to suffer any prejudice arising from the delayed consideration of the issue. Lastly, based on our review of the record as a whole, we have no reason to believe that the interests of justice would be better served by an adjudication of the merits, rather than dismissal on procedural grounds.

### Conclusion

For the reasons stated, we recommend that the writ be denied and the petition dismissed with prejudice. Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Loretta A. Preska, Room 2220, 500 Pearl Street, New York, New York 10007-1312 and to the chambers of the

undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985), reh'g denied, 474 U.S. 1111 (1986); Small v. Sec'y of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: New York, New York
       January 7, 2014

                    RESPECTFULLY SUBMITTED,


                    _____
                    MICHAEL H. DOLINGER
                    UNITED STATES MAGISTRATE JUDGE


21

Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. Calvin ("John") Miller
00-R-7491
Riverview Correctional Facility
P.O. Box 247
Ogdensburg, New York 13669

Mr. Calvin ("John") Miller
A#: 039-746-222
Batavia Detention Facility
4250 Federal Dr.
Batavia NY 14020

Mr. Calvin ("John") Miller
c/o Bronx I Area Office
New York State Parole Offices
14 Bruckner Avenue
Bronx, NY 10454

Nancy Killian, Esq.
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, New York 10451